## Meehan *v.* Connell Anthracite Mining Company.

Argued April 15, 1935. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. Roy Lilley,* with him *William P. Wilson,* for appel-
lant.

*William J. Fitzgerald,* of *Kelly, Balentine, Fitzgerald
& Kelly,* with him *J. Hayden Oliver,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, May 13, 1935:

State Line & Sullivan Railroad Company,—whose
rights, so far as concerns this proceeding, are now vested
in the appellant, the Bernice Land Corporation,—was
the owner of a tract of coal land in Sullivan County,

Pennsylvania, which it leased on December 24, 1903, to William S. Connell and J. S. McAnulty (whose rights are now vested in appellee) for a term of 99 years or until the exhaustion of all the merchantable coal in, upon or under the demised premises, but not sooner than the first day of May, 1934, with the sole and exclusive right to mine and remove the same for their sole use and benefit, and also the right, during the life of the lease, to use the surface of said lands, so far as the same may be necessary for all purposes in connection with the mining of coal therefrom, and preparing the same for market, including the right to locate and make openings therein and to erect buildings and construct railroads thereon, and also the right to quarry such stones from said lands as the lessees might require for the building and improvements to be placed thereon in connection with such mining. The lessees also thereby agreed to purchase and later did purchase and pay for all the breakers, buildings, machinery and mining improvements and live stock, wagons, storehouse supplies, harness and all other appurtenances upon said lands owned by the lessors.

By the lease, the lessees agreed to pay the lessors a specified price per ton for all coal mined from the property and shipped or sold at retail, and to pay all United States, state, county, local and all other taxes assessed upon the demised premises, and in respect to the coal therein and the breakers, building, machinery and other mining improvements, and live stock, wagons, harness and all other appurtenances thereon, said taxes to be paid as and when the same become severally payable; and to fully insure the breakers, buildings, machinery and other mining improvements, now or hereafter placed upon the demised premises, all policies therefor to be made payable to the lessors as collateral security to the undertaking of the lessees under the lease.

The 23d paragraph of the agreement specifies that "If the lessees shall not keep and perform all of the covenants, conditions, agreements and obligations, and ob-

serve all the terms, provisions and restrictions of this lease on their part to be kept, performed and observed, or shall violate any of them, or shall make any assignment for the benefit of creditors which shall include the demised premises or any part thereof, or shall suffer any judgment to be entered against them beyond what their other property is amply sufficient to secure and pay, or if, by reason of insolvency, bankruptcy or otherwise, they shall be unable to fulfill the covenants herein contained, or if they shall do any other act by which any other person, persons or corporations may or shall claim to become the owner or owners in whole or in part, or to have any control over the said leasehold estate without the consent of the lessors in writing first had and obtained, or shall do or omit to do any act the doing or omission of which shall in any manner jeopardize the existence of the lease of the railroad of the lessors to the Pennsylvania & New York Canal & Railroad Company, then and from thenceforth in any of such cases it shall be lawful for the lessors (after the expiration of sixty days) to give notice to the lessees that it annuls and makes void this lease and the privileges hereby granted; and thereupon this lease and the said privileges shall cease and terminate and become void, and the lessors may enter upon the premises occupied by the lessees and seize and take possession of the said premises and all the improvements at the time thereon for its own use as its own property, anything herein contained to the contrary notwithstanding; and any attorney or counsellor-at-law entitled to practice in the State of Pennsylvania at the request of the lessors and without any liability for his so doing, is expressly empowered by said lessees to immediately thereafter as attorney for the lessees sign an agreement for entering in any proper court an amicable action of ejectment and judgment thereon, without any stay of execution against the lessees, and all persons claiming through or under them for the recovery by the lessors of possession of the premises aforesaid for which such agreement or this lease

shall be a sufficient warrant, and thereupon a writ of habere facias possessionem may issue forthwith, without any prior writ or proceeding whatever upon said judgment; and the lessees hereby release to the lessors all errors and defects whatsoever in entering such action or judgment, or in any proceeding thereon or concerning the same, and hereby agree that no motion to open the judgment or writ of error or objection or exception shall be taken or made thereto, and a copy of this lease, verified by affidavit being filed, it shall not be necessary to file the original, any law or rule of court to the contrary notwithstanding. . . .

"No termination of this lease, or taking or recovering possession of the demised premises shall deprive the lessors of any action or remedy against the lessees, or any damage for breach of any covenant, promise or agreement by the lessees in this lease entered into or made, or for any rent and sums of money that may be due and unpaid, and the remedies in this clause provided shall not be construed to be exclusive of any other remedies the lessors may have at law or in equity. The delay or omission of the lessors at any time or times to exercise all or any of the rights conferred by any clause of this lease or otherwise, shall not be construed to be nor operate as a waiver of any such right or rights of the lessors in respect to existing and subsequent defaults of the lessees."

The 27th paragraph of the lease provides as follows: "All the terms, provisions, covenants, obligations and restrictions in this lease contained, shall be binding upon and inure to the benefit of the successors, executors, administrators and assigns of the parties hereto respectively in accordance with the provisions hereof."

By an amendment to the lease, dated March 25, 1932, it is further provided: "Seventeenth. Upon any termination of this lease, whether under clause twenty-third hereof or otherwise in any manner whatsoever, the lessors shall have the following rights, provided that they

give notice to the lessees that they claim these rights before one month has elapsed after such termination:

"The right to take possession of any part or all of the property of the lessees upon the premises, and also all or any things owned by it for use in connection with the premises whether for the moment thereon or not. . . .

"And in addition thereto upon any such termination of this lease the lessors shall be entitled to any improvements which become their property under said clause twenty-third, and shall also be entitled to purchase any other improvements including breakers, buildings, machinery and other mining improvements and live stock, wagons, harness, all storehouse supplies and all other appurtenances which may then be or ordinarily are upon the demised premises at a price to be then agreed upon, or settled by arbitration as provided in the eighteenth clause of this lease."

The tenants in possession having fallen into arrears in the payment of rents and taxes under the terms of the lease, the parties entered into a supplementary agreement on March 25, 1932, by virtue of which, in consideration of certain collateral security given by the lessees to the lessors, the latter gave to the former additional time to pay up the arrearages. Said supplementary agreement provided, however, "It is expressly agreed by the parties hereto that neither the existing breach of the covenant to pay taxes, nor any other existing breach of the obligation of the [tenant] to the [landlord] has been waived by the [latter] (other than the immediate payment of the sums, whose payment is postponed by the third clause of this agreement) and that no breach is waived by the execution of this instrument or by the execution of the amendment to the said lease of even date herein referred to, or by the execution, delivery and acceptance of the [collateral security for the arrearages] . . . and that the [landlord] has and shall continue to have the rights which such breaches give it under the lease."

Unfortunately, the hoped-for improvement in the coal industry did not materialize. The arrearages which temporarily were provided for in the last-named agreement, in large part remained unpaid, and there were still further arrearages, whereupon the landlord, on November 10, 1933, determined to exercise the power of forfeiture given by the lease, and notified the tenant to that effect. When, however, the landlord undertook to take possession of the leased premises, it found that the Court of Common Pleas of Lackawanna County—in which county the tenant had been incorporated—had, on April 25, 1933, appointed receivers for the tenant, and that the receivers were in possession and operating the mines. Correctly apprehending that if it interfered with them suo motu in the work which they were doing under the authority and direction of that court, its officials might speedily find that it was in contempt thereof, it wisely prepared and filed therein, on March 1, 1934, a petition praying leave, inter alia, "to proceed on its lease to recover possession of its property in the courts of Sullivan County." A rule to show cause was granted, answers were filed and testimony taken, resulting ultimately in an order dismissing the petition. Therefrom the present appeal is taken. The order must be reversed.

By the terms of the lease, as above quoted, appellant leased the land to the lessees under the express agreement that if the lessees or their assigns did not pay the rent and taxes as they became due and payable, as admittedly they did not, the lessors might, at any time, reënter into and take and retain possession of the property. This contract is protected by article I, section 17 of the Constitution of the State, as well against adverse legislative and judicial action, as against impairment by the other contracting party. Consequently, while appellant could not, without the consent of the court below, proceed against property in the hands of its receivers, that tribunal was bound, under the existing facts and upon due application, to give leave to the lessors to at-

tempt to enforce their alleged contractual right, not by an amicable action and judgment in ejectment, however, in such tribunal as had the jurisdiction to enforce it,— in this case in the Court of Common Pleas of Sullivan County, in which county the lands were situated: Galey v. Guffey, 248 Pa. 523; Odell v. H. Batterman Co., 223 Fed. 292.

In the first of these cases, the court below had appointed a receiver of a property, whereon there was a mortgage which provided that, in the event of a default, a scire facias might issue for the collection of the principal, interest, fees, costs and expenses. The mortgagee applied for leave to proceed to recover the amount due him from the mortgaged estate in the hands of the receiver. This was refused and the mortgagee appealed. We reversed and decided that "it is not within the power of courts of equity to restrain secured creditors of an individual, whose estate has been placed in the hands of a receiver, from adopting and applying such legal remedies as are allowed them by the terms of their contract and at such time as that contract by its terms permits." This case is cited with approval in Hogsett v. Thompson, 258 Pa. 85, 95. So in Spayd v. Ringing Rocks Lodge, 270 Pa. 67, 71, we quoted with approval the following language from Phila. Trust Co. v. Northumberland Co. Trac. Co., 258 Pa. 152, 166: "there is no authority, common law or statutory, in the courts, which empowers them to exercise functions expressly under the ban of a constitutional inhibition."

It may be stated, therefore, as a general rule, that where receivers have, virtute officii, possession of property in which a third party has an interest which is paramount to that of the receivers, the court appointing them should, upon proper application, give leave to such third party to enforce, in the appropriate court, his claim to the property in a suit against the receivers, and a refusal to give such leave, when duly and properly applied for, is reversible error unless it clearly and certainly ap-

pears that the petitioner's alleged claim is not valid. It is not for the court appointing the receivers, to determine the controversy between the parties, if it is a disputable one, unless it is the court which should or may properly determine it.

The court below did not, nor do we, decide what defenses will be open in the Sullivan County court, if appellant undertakes to enforce its claim of forfeiture, but it may not be inappropriate to call attention to the following legal principles: (a) That the time specified in a contract for payment of a sum of money "is never an essential part of an agreement," in the sense that a breach thereof wholly destroys the contract: Decamp v. Feay, 5 S. & R. 323; Remington v. Irwin, 14 Pa. 143, 145. (b) "Though delay [in retaking possession for breach of the terms of a contract which authorizes this to be done] is immaterial, nevertheless if the lessor elects not to reënter, his decision is final, and this will be inferred from the receipt of rent accruing after the breach, or from any other recognition of the continuance of the term" (Model Dairy Co. v. Foltis-Fischer, 67 Fed. (2d) 704, 706-7. (c) That an ejectment, in cases like the present, is, in effect, an equitable ejectment, and if, in an appropriate proceeding, delay in payment is the only basis of the lessor's complaint, the verdict may be entered for plaintiff "to be released on payment of the unpaid installments within such [reasonable] time as, in equity, the contract and circumstances require": Jones v. Scott, 209 Pa. 177, 181.

The order of the court below is reversed, the petition of appellant is reinstated, and the record is remitted that further proceedings may be had not inconsistent with this opinion.