# CITY OF PHILADELPHIA v. LIEBER-MAN et al.

## No. 7153.

Circuit Court of Appeals, Third Circuit.

Feb. 8, 1940.

On Reargument May 22, 1940.

Samuel Feldman, and Abraham Wernick, Asst. City Sols., and Joseph Sharfsin, City Sol., all of Philadelphia, Pa., for appellant.

William C. Ferguson, Jr., David Rosen, Hirschwald, Goff & Rubin, and Strong, Saylor & Ferguson, all of Philadelphia, Pa., for appellees.

Before MARIS, CLARK, and JONES, Circuit Judges.

MARIS, Circuit Judge.

Consolidated Indemnity and Insurance Company, hereinafter called Consolidated, was a New York corporation engaged in the business of insurance and indemnity In order to qualify as surety upon contracts for the City of Philadelphia and pursuant to the requirements of an ordinance of that city approved July 21, 1887, it deposited with the Broad Street Trust Company, of Philadelphia, bonds of the face value of $100,000. This was done under the terms of a depository agreement executed by Consolidated and a custodian agreement executed by Broad Street Trust Company November 30, 1929. The securities so deposited were approved by the City of Philadelphia December 2, 1929.

On May 29, 1934, a New York court of competent jurisdiction ordered that the affairs of Consolidated be liquidated. Pending the proceedings in New York, on May 11, 1934 the plaintiffs were appointed ancillary receivers in equity of all assets of Consolidated located within the jurisdiction of the District Court for the Eastern District of Pennsylvania. On June 14, 1934, the ancillary receivers, the Broad Street Trust Company and the City of

Philadelphia, with the consent of the district court, reaffirmed the terms of the deposit agreement of 1929 and agreed upon the release of the original bonds deposited under the old agreement and the substitution of others of equal face value.

By bill in equity filed February 17, 1937, the plaintiffs, the ancillary receivers of Consolidated, sought to obtain information from the City of Philadelphia as to all bonds upon which Consolidated was surety to it; an accounting of any sums in excess of outstanding claims or judgments that the city had or might have against principals for whom Consolidated was surety and the return to the plaintiffs of all securities in excess of those amounts. The matter was referred by the district court to a special master April 22, 1937. In his report, filed February 28, 1939, the special master recommended that the Broad Street Trust Company be directed to deliver to the plaintiffs all the securities on deposit with it. This appeal is by the City of Philadelphia from the decree of the district court dismissing its exceptions and confirming the special master's report.

The agreement of November 30, 1929, provided that the bonds deposited thereunder should not be returned by Broad Street Trust Company to Consolidated without the consent of the city and while there were in existence any outstanding obligations of Consolidated. The city has not given its consent to the return of the securities by Broad Street Trust Company. On the contrary it actively opposes transfer of the securities on the ground that some of the claims covered by bonds of Consolidated for which the securities are collateral are in fact outstanding and that since the time for bringing suit for property damages has not yet expired additional claims, indefinite as to number and amount, may still be outstanding. The city contends that the bonds deposited with Broad Street Trust Company constitute a trust fund set up to secure it for any loss which it may suffer by reason of the failure of Consolidated to fulfill its obligations and that this trust continues until all the obligations outstanding upon the surety bonds have been fulfilled or the statutory limitation period against claims has elapsed.

■ The terms of the original deposit agreement substantiate the claim that the intent of the parties was to create an active trust for the benefit of the City of Philadelphia. Among the active duties im-

posed upon the Broad Street Trust Company are those of collecting and paying the interest on the deposited securities to Consolidated, selling deposited securities sufficient to pay any unpaid final judgments recovered by the City of Philadelphia against Consolidated, and holding the remaining deposited securities so long as the City of Philadelphia holds bonds for outstanding obligations of Consolidated and until the City Solicitor consents to the return of the securities to Consolidated. The last two provisions were beyond dispute for the benefit of the City of Philadelphia. The terms of this trust were formally approved by the plaintiffs, who, in their official capacity as ancillary receivers and as an act of administering the affairs of Consolidated, entered into the 1934 supplemental agreement to which the City of Philadelphia was a party whereby the securities originally deposited were taken out and others substituted for them.

It was upon the strength of the deposit of the securities thus placed in trust beyond the control of Consolidated that the City of Philadelphia permitted that company to transact municipal bonding business and accepted surety bonds issued by Consolidated. The city clearly has a contractual right to the continuation of the trust, so long as any of the obligations for which the surety bonds were executed are outstanding. Such a right may not be impaired by a court of equity. Galey v. Guffey, 248 Pa. 523, 94 A. 238, Philadelphia Trust Co. v. Northumberland County T. Co., 258 Pa. 152, 101 A. 970.

■ The decree of the district court does impair the city's contractual rights, for by ordering the transfer of the securities to the receivers it takes away from the city the protection of a trust fund which it had the foresight to require to be put in the hands of an independent trustee for its own protection. It is settled that a receiver of an insolvent corporation is not entitled to possession of securities lawfully held in trust. In re Voluntary Dissolution Home Provident S. F. Ass'n., 129 N.Y. 288, 29 N.E. 323; Risk v. Kansas Trust & Banking Co., C.C., 58 F. 45; Brackett v. Middlesex Banking Co., 89 Conn. 645, 95 A. 12; Hendrie & B. Bolthoff Mfg. & Supply Co. v. Beck, 72 Colo. 387, 211 P. 365, 28 A.L.R. 406.

This leaves for our consideration the question whether the trust has in fact terminated. The answer to this question de-

pends upon whether there are actually any obligations outstanding at the present time. The special master determined that there could be no outstanding liabilities for which the bonds would be security. We do not think that this finding can be supported by the record. On the contrary we find ample evidence in the record that there were obligations outstanding. For example: On December 6, 1930 Mandes Golder, trading as Golder Construction Company, and the City of Philadelphia signed a contract under seal for the construction of subway stations and trackage at Eighth and Locust Streets in Philadelphia. Part of this undertaking reads: "It is understood and agreed that the party of the second part [i. e. the contractor] shall be considered an independent contractor in respect of the work covered by this agreement and that the party of the second part shall alone be answerable for any loss or damage caused by the party of the second part or by the servants, agents or employees of the party of the second part; and the party of the second part agrees to fully indemnify, protect and save harmless the party of the first part [i. e. the city] from all loss, damage or expense from claims and liability resulting from accident, negligence or other cause during the prosecution of the work covered by this contract. The party of the second part further contracts and agrees to be responsible for and pay all loss or damage to either person or property which may, in any manner arise by reason of the prosecution of the work covered by this contract during the progress of the same, and, in the case of the happening of such loss or damage, the amount thereof may be retained by the party of the first part out of any payments due or to grow due to the party of the second part under this or any other contract." The condition of the bond which was executed under seal by Mandes Golder as the principal obligor and Consolidated and others as sureties, in the sum of $2,400,000 reads: "That if the said Principal Obligor shall and do well and truly, in all respects, comply with all the terms, conditions and covenants contained in the above mentioned contract, and shall and do pay unto the City of Philadelphia upon demand, any and all loss, damage and expenses which the said city may or shall sustain by reason of the failure of the said Principal Obligor to comply with the terms of the said contract * * * then this obligation to be null and void; otherwise, to be and remain in full force and virtue."

This bond and its accompanying contract were offered in evidence by the city because they were either identical or substantially similar to sixteen other undertakings of Consolidated. The undertaking of the principal obligor and the surety was clearly one of indemnity. In Williston and Thompson on Contracts, § 2004, the authors state the general rule to be that "on an obligation to indemnify against loss there must be damage before the statutory period begins, for by the nature of such a contract there is no breach until there is damage."

The Pennsylvania cases differentiate between indemnity against liability and indemnity against loss but for the purposes of our discussion it is not necessary to determine whether the limitation period begins to run when there is a claim against the city or when a loss actually occurs. Ardesco Oil Co. v. N. A. Mining & Oil Co., 66 Pa. 375; Ruzyc et ux. to Use, Aplnts., v. Brown et ux., 320 Pa. 213, 181 A. 783. What is of importance is that the limitation period does not begin to run at the completion of the work, as seems to have been assumed by both parties, but when there is a breach of the covenant to indemnify, which under the Pennsylvania authorities cannot be earlier than when a claim is made against the obligee. The action by the obligee is not for the damages arising by reason of injuries to the person or damages to property but upon the contract.

Had the instruments been simple contracts the statutory period would be six years from the breach of the undertaking, a period which obviously has not run. However, the contracts are under seal. The statute of limitations has no application to an action for breach of a covenant therein. Parsons Trading Co. v. Dohan et al., 312 Pa. 464, 167 A. 310. There is only the presumption of payment after twenty years.

The plaintiffs rely largely upon the Pennsylvania Act of July 1, 1937, P.L. 2547, 53 P.S. § 2774, to support their contention that all possibility of claims against the City of Philadelphia is now extinct. That act requires anyone claiming damages from a municipality arising from negligence to serve notice of the intention to file a claim "within six (6) months from the date

of origin of such claim." The last city contract upon which Consolidated was a surety was completed April 15, 1937. Since it is conceded that no such notice has been received by the city the plaintiffs argue that suit could not have been brought against the city more than six months after April 15, 1937, or at the latest six months after July 1, 1937, the effective date of the act. We think that such a conclusion is not justified.

The six months' period for the serving of such notice does not begin to run until "the date of origin of such claim," in other words, until the date the cause of action accrued. There have been cases in which the Pennsylvania courts have held that "The action accrues when the damage is sustained by the plaintiff, not when the causes are set in motion ultimately producing injury as a consequence." Rudman et ux. v. City of Scranton et al., 114 Pa.Super. 148, 152, 173 A. 892, 894. Using this test for determining when the cause of action accrued the City of Philadephia may still be subject to suit. For example: Suppose on June 9, 1940, one using the subway escalator accepted by the city June 19, 1934, sustained injuries due to negligence in its construction. The plaintiff would have six months from June 9, 1940, within which to serve his notice upon the city of an intention to file a claim, although the escalator was completed by the contractor and accepted by the city six years earlier. Or to give another illustration: Should damages accrue in the future to a property adjacent to one of the subways because of failure of the contractor to provide the necessary lateral support a Pennsylvania court, following the ruling in Pollock v. Pittsburgh, Bessemer & Lake Erie R. R. Co., 275 Pa. 467, 119 A. 547, 26 A.L.R. 1232, might rule that the cause of action accrued upon the actual occurrence of the mischief, the sliding of the earth, and not from the time of excavation. It will, therefore, be apparent that the contingency of suit has by no means been terminated by reason of the expiration of the statutory limitation period or of the period for the serving of notice.

Much is made by the plaintiffs of the phrase "during the prosecution of the work" which is contained in the contractor's obligation that he would "fully indemnify, protect and save harmless the [city] from all loss, damage and expense from claims and liability resulting from accident, negligence or other cause, during the prosecution of the work covered by this contract." As we interpret this clause it means that the negligence, in order to be such as to come within the terms of the bond, must have been negligence which arose during the prosecution of the work covered by the contract, rather than that the resulting loss, damage or expense was suffered during that period.

The plaintiffs contend that the City of Philadelphia can no longer obtain judgment against Consolidated because of the New York decree directing the dissolution of that company and that there is, therefore, now no reason for Broad Street Trust Company to retain the securities. However, Section 29 of the General Corporation Law of New York as amended by the Laws of 1932, c. 552 (23 N.Y.Consol. Laws (McKinney), Pocket Supp.) expressly provides that "Upon the dissolution of a corporation for any cause and whether voluntary or involuntary its corporate existence shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations * * * and it may sue and be sued in its corporate name." This right to sue a New York corporation in spite of dissolution was noted by the Court of Appeals for the District of Columbia in Bloedorn v. Washington Times Co., 67 App.D.C. 91, 89 F.2d 835.

Finally, the plaintiffs contend that the injunction against suits contained in the decree of the court below appointing them ancillary receivers will prevent the city from obtaining judgment hereafter against Consolidated. As to this it need only be said that it will be the duty of the court below, upon application by the city. to give it leave to prosecute such actions against Consolidated as may be necessary to protect its rights in the premises. Meehan v. Connell Anthracite Mining Co., 318 Pa. 481, 178 A. 833.

The decree of the district court is reversed and the cause is remanded, with directions to dismiss the bill of complaint.

### On Reargument.

After full reargument, in which the ancillary receivers of International Re-Insurance Corporation joined as amici curiæ, we adhere to our former conclusion that the trust created by the agreements of November 30, 1929 and June 14, 1934, has not terminated. The contracts in connection with which Consolidated became

surety, of which that between Golder and the city is typical, contain the following significant clause: " * * * and the party of the second part agrees to fully indemnify, protect and save harmless the party of the first part from all loss, damage or expense from claims and liability resulting from accident, negligence or other cause during the prosecution of the work covered by this contract."

We cannot rewrite the agreement of the parties but must take it as they have written it. Clearly the language just quoted imposes upon the contractor an unlimited obligation to indemnify the city against loss, damage or expense from claims and liability if the latter result from accident, negligence or other cause which occurred during the prosecution of the work and in respect to it. In the next sentence, which imposes upon the contractor direct liability to pay loss or damage in any manner arising by reason of the prosecution of the work, liability is expressly restricted to loss or damage arising during the progress of the work. The absence of such an express restriction in the prior clause indicates a contrary intent.

The plaintiffs argue that under some of the Pennsylvania authorities there is a possibility that the city might be held liable for damage caused during construction by the contractor's negligence, even though he is stipulated to be an independent contractor. Therefore, they say, there is point to requiring from him an agreement of indemnity against claims for damage arising during the work. But since after completion and acceptance by the city the contractor ceases to be liable to third parties for damage thereafter occurring, the plaintiffs argue that the parties could not have intended to impose a continuing obligation of indemnity upon him.

The difficulty with this argument is that it does not tell the whole story. If the city should be held liable for the contractor's negligence despite his agreed independent status, that liability would of course continue after the completion of the work and the city would be entitled to require indemnity thereafter. If on the other hand the contractor is held to be a truly independent one for whose negligence the city is ordinarily not responsible, it must still be remembered that there are exceptions to the rule of non-liability in such cases.[1] Thus, to give but one illustration, the city might be held liable because it accepted the contractor's work, knowing or having reason to know that it was defective.[2] Under such circumstances it has been held in Pennsylvania that an injured third party may recover against the employer of the independent contractor.[3] Thus it will be seen that the city cannot escape all possibility of liability after completion for negligence occurring during construction by dealing with an independent contractor. It can, however, require the contractor to indemnify it against such subsequent liability, and this we think it did in the present case.

It is strongly urged that our construction of the contract imposes the possibility of perpetual liability upon the contractor and his surety. This can only be so in the sense that if, and only if, the contractor was actually negligent during the work he and his surety might be compelled to indemnify the city for any loss caused by that negligence, even though suffered long afterwards. However, we may point out that the plaintiffs state, and the city appears to acquiesce in the statement, that it has been the uniform usage of the city in dealing with its contractors and their sureties to terminate the indemnity agreements and return the securities deposited by the sureties at the expiration of six years after the completion of the work and its acceptance by the city if no suits or claims are then pending. It it well settled that evidence of usage is admissible to show the intent of the parties as to an incident of the contract upon which the writing is silent.[4] Here, as we have seen, the contract is silent as to the term during which the indemnity agreement is to remain effective.

In the present case the last contract involved was completed in April, 1937. The period of six years will, therefore, not end until April, 1943. It follows from what has been said that the decree of the district court was properly reversed.

[1] Restatement, Torts, §§ 410–429.
[2] Restatement, Torts, § 412.
[3] Sipe v. Pennsylvania R. R. Co., 222 Pa. 400, 71 A. 847.
[4] Restatement, Contracts, §§ 245–249; Williston and Thompson on Contracts, §§ 648–662.