**MODART, INC. and Park & Tilford (a Corporation)**

v.

**PENROSE INDUSTRIES CORPORATION and Sun Ray Drug Co.**

**Civ. A. No. 37995.**

United States District Court
E. D. Pennsylvania.
Sept. 20, 1967.

---

Goff & Rubin, Sklar & Pearl, Philadelphia, Pa., for plaintiff.

Wolf, Block, Schorr & Solis-Cohen, Rosenfeld & Weinrott, Philadelphia, Pa., for Penrose Industries Corp. and Sun Ray Drug Co.

Wexler, Mulder & Weisman, Philadelphia, Pa., for The Joscar Co.

Adelman & Lavine, L. J. Lichtenstein, Philadelphia, Pa., for creditors.

### MEMORANDUM AND ORDER SUR PETITION OF THE JOSCAR COMPANY FOR PERMISSION TO ISSUE EXECUTION, ETC. (Document 77) AND ANSWER TO THAT PETITION (Document 84)

VAN DUSEN, Circuit Judge (sitting by designation).

By order of May 11, 1965 (Document 6), Leon J. Obermayer was appointed:

" * * * Conservator pursuant to Rule 66 of the Rules of Federal Procedure to investigate all aspects of the * * * sale and determine whether the sale made by Sun Ray to Marrud, Incorporated, under the Sale Agreement is in the best interest of creditors, and to take appropriate action in the interest of creditors before this Court consistent with the findings and conclusions in respect thereto. The said Conservator shall have the rights, powers and duties similar to those of a Receiver with respect to the foregoing matters, in accordance with the aforesaid Federal Rule of Civil Procedure No. 66.

\* \* \* \* \* \*

"The Conservator shall forthwith be entitled to and shall take into his possession all funds payable for any reason whatsoever by Marrud, Incorporated, to Sun Ray under the provisions of the Sale Agreement * * *."[1]

---

1. By order of May 26, 1965 (Document 15), the Conservator was authorized to take control of more property than the funds payable under the Sale Agreement; and this authorization was broadened still further by order of June 7, 1965 (Document 18) to include more of the property of the debtors. The injunctions restraining creditors and others from any proceedings against the property or funds were expanded accordingly in both orders. By court order of December 20, 1965 (Document 48), the "Sale Agreement" between defendant-debtors and Marrud, Inc. was approved as modified.

By agreement of January 3, 1966, authorized by order of January 12, 1966 (Document 50), the Conservator provided for the settlement in full of claims of defendant-debtors' general unsecured creditors at 32½% of their claims, to be paid in semi-annual instalments over two years.[2]

Petitioner Joscar Company seeks court permission to levy execution on funds in the hands of the Conservator in satisfaction of a judgment entered by default in the United States District Court for the Southern District of New York on April 7, 1965, and docketed in the United States District Court for the Eastern District of Pennsylvania on September 22, 1965.

Given the order of May 11, 1965 (Document 6, quoted in part above), the general principles of receivership law apply to this petition and presumably would apply regardless of the designation used to characterize Mr. Obermayer's role in assistance of this court. See, e. g., High, Receivers, § 182 (4th Ed. 1910).

 According to the cases and treatises, the rights of creditors to the property in possession of the receiver are fixed as of the moment of his appointment, e. g., American Surety Co. v. Finletter, 274 F. 152 (3rd Cir. 1921); In re United Security Trust Co., 321 Pa. 276, 184 A. 106 (1936); 31 Pa.L.Encyc., "Receivers," § 211 (p. 171); 1 Clark on Receivers, § 649(b) (p. 915, 2d Ed. 1929). Accordingly, all valid, pre-existing liens on the property continue despite the receivership, e. g., Philadelphia Trust Co. v. Northumberland County Traction Co., 258 Pa. 152, 101 A. 970 (1917); 75 C.J.S. Receivers § 128, p. 766, and all other claims continue their status as of the appointment date. E. g., Merchantile Trust Co. v. Southern States Land & Timber Co., 86 F. 711 (5th Cir. 1898).

 Petitioner Joscar Company alleged that it had a "vested property right" to issue execution on its judgment. But the law of receivership does not recognize or grant any special status to this particular claim, be it a "vested right" or not.

"A judgment may or may not by statute constitute a lien on all or part of the judgment debtor's property. A judgment which constitutes a lien on part or all of the judgment debtor's property before appointment of a receiver still constitutes a lien after appointment, and the appointment will not disturb it. Ordinarily, judgment debts unless they are liens have no priority over simple debts." [Citing In Re Lord & Polk Chemical Co., 7 Del.Ch. 248, 265, 44 A. 775 (1895).] 1 Clark on Receivers § 685 (p. 994).[3]

Furthermore, the extraordinary equitable relief of a receivership also means that even if a valid lien has been acquired before appointment, once the court's jurisdiction attaches, all proceedings to enforce the lien are suspended unless leave of court is obtained. See, e. g., 53 C.J. § 160 (pp. 132–133); 75 C.J.S. Receivers § 130, p. 767, § 135, p. 777; 1 Clark on Receivers § 611(a) (p. 835), § 646 (p. 910). Grosscup v. German Savings & Loan Society, 162 F. 947, 950 (C.C.D.Ore.1908). The court, sitting in equity, has great discretion in whether or not to allow proceedings pursuant to an established lien or allow efforts to perfect a lien. A pre-existing contractual remedy between creditor and debtor would bind the receiver and, through the constitutional protection of contracts, would control the court's exercise of discretion, e. g., Meehan v. Con-

---

2. This agreement was amended by letter on August 15, 1966, which provided that if any extra funds remained at the end of the Conservatorship and satisfaction of all claims under the agreement, the funds would go to parties other than the defendant-debtors. See Exhibit A of Defendants' Answer, Document 84.

3. An exception to this rule seems to be found in some instances of "receivers pendente lite," see, e. g., Johnson v. Garner, 233 F. 756, 776 (D.Nev.1916), where some later acquired liens do attain a certain type of "priority."

nell Anthracite Mining Co., 318 Pa. 481, 178 A. 833 (1935). But Joscar Company has no such contractual remedy in this case, and, of course, it has no secured claim which would force the court to grant any "equitable levy." Cf. Atlantic Trust Co. v. Dana, 128 F. 209 (9th Cir. 1903).

Joscar's petition accordingly cannot be granted because their judgment does not constitute a valid lien and because it would defeat the purposes of this equity receivership to allow them to levy execution against the Conservator now, or at any future time.[4] The judgment in the United States District Court in New York constituted a lien on real estate there according to the judgment lien law of New York, N.Y. Lien Law, McKinney's Consol.Laws, c. 33, §§ 40–64; N.Y.C.P.L.R. § 5018; 28 U.S.C. § 1962. No judgment was docketed in Pennslvania until several months after the appointment of the Conservator. Thus Joscar Company acquired no lien on real estate in Philadelphia County, 28 U.S.C. § 1962, 12 P.S. §§ 877 et seq., 921 et seq., nor in any other county. A fortiori, no judgment lien existed or exists on personalty of defendant-debtors; no execution has yet been levied, nor could it be.

Since Joscar Company has no lien nor any "vested right," 20 Pa.L. Encyc., "Judgments," § 361 (p. 498); Quinn v. Bancroft-Jones Corporation, 12 F.2d 958 (W.D.N.Y.1926); Davis v. Senaca Falls Mfg. Co., 8 F.2d 546, 550 (W.D.N.Y.1925), whether it should be allowed to levy execution permissively rests in the court's customary equity discretion.

The purpose of appointing a Conservator in this case, as with the appointment of any receiver, was to "preserve and conserve or realize the property or fund[s]" that belonged or might belong to the defendant-debtors. 1 Clark on Receivers § 648 (p. 913). No "vested rights" accrue to any unsecured claimants by the appointment. 1 Clark on Receivers § 649 (p. 915). The conservatorship put all creditors to an election to proceed against the debtors in a separate action or to file their claims or intervene in the "receivership" action and take their share of the debtors' property upon distribution by the receiver. Any judgment on a claim outside the receivership is only a decree that the defendant-debtor pay the plaintiff; if the judgment creditor wants to share, he must prove his claim to the appointing court and get an order to the effect that the judgment establishes his right to share—share with other creditors. 1 Clark on Receivers § 610 (p. 834), § 622 (p. 849), § 649(a) (p. 915). The Supreme Court has suggested that a court, in allowing permissive suits against the receiver, act according to what "in its judgment may be most beneficial to those interested in the estate." Porter v. Sabin, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815 (1893). If, even when a creditor has a pre-existing lien, the lien is not entitled to be paid (in its proper order) until the final receivership distribution, 1 Clark on Receivers § 612 (pp. 838–9), it seems difficult to see how Joscar Company can obtain early execution and payment and without harm to all other creditors interested in the estate.[5] The agreement between the Conservator and the defendants attempts to secure a maximum of money for the several creditors in exchange for the complete settlement of their claims. Joscar Company, in seeking permissive

---

4. Joscar Company, of course, has a valid judgment and any property that later comes into the possession of the debtor, after the receivership is over, would be open to levy of execution. Also, the petitioner may proceed against any property of the debtors which is not in the hands of the Conservator or to which he is not entitled.

5. Payment, even of judgment creditors, comes at the time for distribution once their claims are proved before the receiver. See, e. g., Pennslyvania Steel Co. v. New York City Ry. Co., 161 F. 786 (C.C.S.D. N.Y.1908).

execution, in effect wants its share of that maximum (some of which came from parties other than the defendants) without offering the quid pro quo of final settlement of its claim. Allowing Joscar Company's petition would, accordingly, defeat the very ends for which this receivership or conservatorship was established. See, e. g., High, Receivers, § 151 (p. 180); Kiwala v. Witkowski, 6 Pa.Dist. & Co.2d 189 (1955). As the Supreme Court emphasized in Wiswall v. Sampson, 14 How. 52, 67, 14 L.Ed. 322 (1852): "Unless the court be permitted to retain the possession of the fund, thus to administer it, how can it ascertain the interest in the same to which the * * * creditor is entitled * * *?" Wiswall v. Sampson held illegal and void a sale under a judgment where the judgment and the execution were both before the receiver was appointed but the sale was afterward. See, also, Hitz v. Jenks, 185 U.S. 155, 22 S.Ct. 598, 46 L. Ed. 851 (1902).

▇▇▇ The agreement between the Conservator and the defendants allows for instalment payments only to consenting creditors. The presence of additional funds in the hands of the receiver to pay contested claims in no way gives Joscar Company any "vested rights" to either the "extra" fund or to the instalment payments. See, e. g., 1 Clark on Receivers § 652 (p. 918).[6]

For the foregoing reasons, the prayer of the petition (Document 77) that "the court enter an order on the Conservator and the defendants to show cause why the petitioner should not be authorized to either issue execution process to attach the unappropriated funds of the debtor in the hands of the Conservator or, in the alternative, that the Conservator be ordered and directed to pay over to the petitioner so much of the fund in its hands to satisfy the petitioner's judgment, with interest and costs" will be denied. In the attached brief, petitioner's counsel states its claim in a more limited way, as follows:

"* * * this application for leave either to issue an attachment against the Conservator to enforce its judgment to the extent of the fund in his hands earmarked for the petitioner or, as an alternative, for an order directing the Conservator to turn over the earmarked money to it."

In view of the Chapter XI reorganization proceedings instituted for Marrud, Inc. on August 26, 1966 (United States District Court for the District of Massachusetts, Cause No. 66–1091),[7] the amounts available to the Conservator may not be the same as those contemplated when the settlement agreement with creditors of January 1966 was executed. The record does not justify the court's doing any more at this time than directing the Conservator to make the same provision, in segregated accounts or otherwise, for the petitioner as it does for other creditors similarly situated.

### ORDER

And now, September 20, 1967, IT IS ORDERED that:

(1) the petition for permission to issue execution, etc. filed by The Joscar Company (Document 77) is denied; and

(2) the Conservator is directed to make the same provision for such com-

6. Briefs of the interested parties are attached as exhibits to this Memorandum. The petitioner's general allegations of property rights and due process seem unrelated to the problem of a court's discretionary interference with a receiver's possession; and it shows us no argument why its claim has any priority or differs from any claim of the other creditors. Because of the disposition of Joscar Company's petition, no discussion is necessary of whether or not it violated the detailed injunctions against any proceedings or any act interfering with the property under the control of the Conservator when it docketed its judgment in the United States District Court for the Eastern District of Pennsylvania on September 22, 1965 (see Documents 6, 15 and 18, granting authority to the Conservator).

7. See Documents 72 and 76.

pany with reference to the judgment recited in such petition as he does for other creditors similarly situated, in view of the settlement agreement of January 1966.