## Reichert v. Reichert

*Robert E. Slota,* for plaintiffs.

*C. David Krewson,* for defendants.

BODLEY, J., February 24, 1970.—Plaintiffs, John A. Reichert and Andrew Petrucci, and defendant, Harry D. Reichert, Jr., each own one third of the outstanding common stock of defendant corporations, Newtown Greenhouses, Inc., and Haj, Inc. For some time they operated a florist business through the corporate structure of Newtown Greenhouses, Inc., upon land owned by defendant Haj, Inc. and subject to a first mortgage lien held by Newtown Savings & Loan Association. The business venture proved to be unsuccessful and the parties ceased operation in the fall of 1968.

This equity action was filed on March 6, 1969, alleging the fraudulent withdrawal of corporate funds by the individual defendant and seeking the dissolution of the corporations as well as the appointment of a liquidating receiver under section 1108 of the

Business Corporation Law of May 5, 1933, P. L. 364, as amended, 15 PS §2108. On May 29, 1969, an order was signed fixing a hearing for June 23, 1969. Matters became more complicated when Newtown Savings & Loan Association, on June 4, 1969, instituted foreclosure proceedings upon the real estate of Haj, Inc. However, counsel for all parties, believing that they had found an amicable solution to their many problems, entered into a stipulation on June 23rd, which was subsequently approved by this court on July 7, 1969, in the form of an order prepared by counsel.

Briefly, the July 7th order provided that the real estate would be sold at public auction by Louis Traiman Auction Company with the proceeds of the sale to be distributed as outlined in the stipulation and order, including the payment of the mortgage debt in full immediately after the payment of the costs of the sale and taxes. To facilitate the intended public auction, the order, with the assent of the mortgagee's counsel, provided for the stay of the foreclosure proceeding "pending sale of the real estate in accordance with this Order." Harry J. Liederbach, Esq., a member of this bar, was appointed liquidating receiver for both defendant corporations, and was given authority to receive the proceeds of the sale, if any, remaining after payment of costs, taxes and the mortgage, and was given the duty to determine the claims of creditors, priorities, etc. The stipulation and order further provided for additional interest and fees to be paid the mortgagee in the event the real estate was not sold on or before August 8, 1969.

Unfortunately, all did not go as planned at the Traiman auction held on August 8th, and although there is some difference of opinion among counsel as to the reasons therefor, it is conceded that the highest bid received for the real estate at the sale was only $27,500, a sum substantially less than the

mortgage debt of approximately $36,500. It appears that all available personal property was sold at the auction, however, and the proceeds thereof, amounting to $283.05, were retained by the auctioneer against his claim of $684.13 for advertising and other costs, leaving a balance due him of $401.08.

On September 4, 1969, a further effort was made by counsel in consultation with the chancellor to work out their differences, in order that a prompt sale of the real estate with its deteriorating improvements could be made. This effort also proved to be unsuccessful, and on November 17, 1969, the mortgagee filed a petition to dissolve the stay order of July 7th so that it might proceed with its foreclosure sale.

On the same date, counsel for plaintiffs filed a petition requesting the court to direct the receiver to proceed with another public auction sale of the real estate, *free and clear of all liens and encumbrances.* This, he alleges, was the intention of the parties when the auction sale was first agreed upon although neither the stipulation nor the order of July 7, 1969, makes any reference to the divestiture of liens. And, it is alleged, only in this manner can the highest possible sales price be achieved. All parties agree that the real estate is the only corporate asset remaining to be liquidated.

Hearing upon these petitions as well as upon plaintiffs' earlier petition to stay the foreclosure, filed in the related action, was held on December 22, 1969, at which time it became apparent that no material facts were in dispute and that the resolution of the issues was to be determined by the chancellor in the exercise of his discretion under the applicable law.

It is the position of the mortgagee, although not a party to the equity action, that neither its first mortgage lien nor its contractual right of foreclosure should be interfered with by this court merely be-

cause of its earlier agreement to the appointment of a receiver and its acquiescence to the aborted auction sale. On the other hand, plaintiffs urge that this court has the power and should exercise the same to direct the receiver to sell the real estate clear and free of encumbrances, with the proceeds being applied first to the expenses of the receivership, taxes, etc., and secondly to the payment of the first lienor with the remainder, if any, to be distributed by the receiver in accordance with other priorities. They confidently allege that a sale at absolute auction will produce more than enough funds to satisfy the mortgage debt and thus create a reserve for other purposes.

Initially, it should be noted that the appointment of the liquidating receiver in this case, although pursuant to a request therefor within the context of section 1108 of the Business Corporation Law, supra, was made not as the result of a judicial determination that a receiver *should* be appointed under the circumstances of the case, but rather the appointment was made by common consent of all counsel and pursuant to a stipulation and an order implementing the same prepared by counsel. It is further observed that the order appointing the receiver did not direct him to take and sell the real estate here in question (conceded to be the only remaining asset of the two corporations), but to the contrary, merely authorized him to receive the proceeds of the contemplated sale of the real estate if any remained after payment of costs, taxes and the mortgage. The public auction sale envisioned by the stipulation and order was held but aborted, and, hence, no proceeds ever came into the hands of the receiver. All the parties agree that the receiver has taken no action in this matter by virtue of his appointment and, indeed, there was none he could have taken under the July 7th order in view of the failure of the auctioneer to sell the real estate.

Section 1108, supra, provides that the order of appointment shall state the receiver's powers and duties, and goes on to provide that the court "at any time" may increase or diminish such powers and duties. Since the only duty which the court could possibly impose upon the receiver at this juncture would involve the sale of the real estate and the distribution of the proceeds thereof, and since the said real estate is subject to a first mortgage lien, which on this record would appear to equal or exceed the value of the real estate, the narrow question to be resolved by the chancellor is whether the real estate should be sold by the receiver, free and clear of the mortgage lien or not, or by way of foreclosure sale in the pending foreclosure proceeding.

In dissolution proceedings, a receiver is appointed in order that he might take hold of corporate assets, preserve them as best he can, and then sell for the best price possible for the mutual benefit of creditors and shareholders. Implicit in the appointment of a receiver is the concept that there is property to be *received* and that there shall be proceeds after liquidation to be distributed in accordance with priorities established by law: 45 Am. Jur., Receivers, §32, page 33.

A receiver stands in the shoes of the owner of the property and takes it subject to all valid liens. Existing priorities and preferences are preserved and the receiver is under a duty to protect such priorities: Philadelphia Trust Company, Trustee v. Northumberland County Traction Company, 258 Pa. 152, 172 (1917); 45 Am. Jur., Receivers, §238, pages 185, 186; 31 P.L.Encyc., Receivers, §10, pages 158, 159, 160. The appointment of a receiver for an insolvent corporation cannot affect or impair liens or contractual rights of creditors. Preexisting liens on property or vested rights of others are not disturbed by the appointment of a receiver, and having no property interest greater

than that of the owner, his right to dispose of the property is subject to the same restrictions and limitations which the existing liens impose upon the owner: Sun Coal Co. v. New Upper Lehigh Coal Co., Inc., 34 Luz. 305, 306 (1940), affirmed on appeal, 340 Pa. 547 (1941); Phila. Trust Company v. Northumberland County Traction Company, supra, at page 172; Blank and Gottschall Co., Inc. v. First National Bank, 355 Pa. 502, 506 (1947); 75 C.J.S., Receivers, §128, page 766.

The rights of creditors in and to property in the possession of a receiver are fixed as of the moment of the receiver's appointment: Commonwealth Trust Company of Pittsburgh v. Harkins, 312 Pa. 402, 410 (1933); Modart, Inc. v. Penrose Industries Corporation, 293 F. Supp. 1116, 1119 (1967). A mortgage lien, therefore, which is good as between the parties to the mortgage instrument and otherwise valid is good as against the receiver of the mortgagor: 31 P. L. Encyc., Receivers, §10.

There is no suggestion here that the mortgage of the Newtown Savings & Loan Association is invalid or that it was the product of fraud or other questionable circumstances so as to colorably give the receiver an interest in the property as sometimes may be the case. See for example Lyons v. Benney, 230 Pa. 117 (1911). The mortgage, therefore, is presumptively valid and this court of equity cannot divest the lien of that mortgage nor deny the mortgagee its contractual right of foreclosure. As noted heretofore, everything in this record points to the probability that the mortgage debt exceeds the market value of the real estate in question. Hence, even if this court had the power to authorize the sale clear and free of the mortgage lien, which it has not, no fund is likely to be created for distribution by the receiver after the proceeds of sale are first applied to the mortgage debt in any event.

The Act of April 30, 1929, P. L. 874, 21 PS §651, provides, in pertinent part:

"When the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property . . . the lien of such mortgage shall not be destroyed or in anywise affected by any judicial sale. . ."

This act means what it says and assuming, as we must on this record, that no other unsatisfied lien[1] antedates that of Newtown Savings & Loan Association, a receiver's sale will not discharge it. While the mortgagee might, if it wishes, waive its right to preserve its lien, it has not done so by way of its earlier consent to the aborted auction sale and does not now choose to do so: McFadden's Assigned Estate, 191 Pa. 624, 627 (1899). Although the auctioneer's advertising handbill relating to the August 8th sale contains the words "Absolute Auction," there is no evidence before us to suggest that the mortgagee authorized such language and neither the stipulation nor the July 7th order justify such a conclusion. The chancellor, therefore, finds that the mortgagee has not waived the protection afforded it by the Act of 1929.

Inasmuch as the priority of the mortgagee's first lien must be preserved and since the chancellor is not satisfied that the value of the real estate exceeds the amount of the mortgage debt, no useful purpose would be served by our directing that the receiver sell at auction under and subject, as would be the case, to the lien of the mortgage. If plaintiffs' optimistic notion of the property's value is justified in fact, they or their prospective auction bidders can be encouraged to attend the foreclosure sale.

---

[1]If a prior unsatisfied lien were of record even though paid, the act would not afford the mortgagee protection, since a purchaser is not bound to look beyond the record: Liss v. Medary Homes, 388 Pa. 139, 145 (1957).

The appointment of a receiver rests in the sound discretion of the court, and it is quite likely that no receiver would have been appointed here in the first instance had inquiry been made into the underlying circumstances of the case. Certainly, if there had been no showing that the value of the property exceeded the mortgage debt, and if there were no other assets to be administered, a receiver would not have been appointed absent the existence of some other compelling reason. See Pennsylvania Turnpike Commission v. Evans, 13 D. & C. 2d 290, 299 (1957), affirmed on appeal, 392 Pa. 110 (1958); Beaumont v. Beaumont, 166 Pa. 615, 616 (1895). It therefore follows that if a receiver has been improvidently appointed by the court upon agreement of counsel for the parties, as in this case, and if it later appears that there remain no assets to be administered, such an appointment should be rescinded.

We have been offered no valid reason for imposing any judicial restraint upon the exercise of the mortgagee's contractual rights nor has counsel for plaintiffs suggested any authority in support of his position. He has cited Baird v. Moshannon Coal Mining Co., 318 Pa. 63 (1935), which is clearly inapposite. Rather than standing for the proposition stated by counsel, it reinforces the law set forth above. Although the court in Baird approved a judicial sale of the insolvent corporation's real estate free and clear of a judgment lien under the peculiar circumstances of that case, it made it crystal clear that had the lien been that of a first mortgage, such a sale could not have been approved, citing the Act of April 30, 1929, supra. It is somewhat difficult to construe counsel's reference to Baird as guileless in view of the court's plain language. The chancellor has examined each of the other authorities cited by plaintiffs' counsel and finds it unnecessary to discuss them, since none il-

luminate the shadowy areas of this field of law more than did the first.

Accordingly, the chancellor finds as a fact that the insolvent corporations now own no assets other than the encumbered real estate, and concludes as a matter of law that the Newtown Savings & Loan Association, as the first lien mortgagee, has not waived its right to preserve the mortgage lien and is entitled to proceed with its foreclosure sale under the contractual right providing therefor in the mortgage. The chancellor also concludes that there are no duties which can reasonably be imposed upon the receiver under the circumstances of this case and that the order of appointment should be rescinded.

As noted heretofore, the sum of $401.08 remains due the Louis Traiman Auction Company for costs expended in connection with the unsuccessful sale of August 8, 1969. Without inquiring into the legal technicalities relating to whether this financial obligation is that of the court-appointed receiver or that of the plaintiffs' attorney, the chancellor finds that it would be inequitable to terminate the dissolution proceedings without providing for the payment of such costs. Especially is this true when it is considered that the mortgagee acquiesced in the proceedings which led to the auctioneer's expenditures. Accordingly, this sum should be paid to the Louis Traiman Auction Company by the mortgagee from the proceeds of the foreclosure sale, or as an added expense of foreclosure in the event it buys the property at the sale.[2]

## DECREE NISI

And now, February 24, 1970, pursuant to the chancellor's foregoing findings of facts and conclusions of

---

[2]It should be noted that the receiver has advised the chancellor that he undertook no duties, made no expenditures and makes no claim for compensation.

law, the request of plaintiffs that the real estate of Haj, Inc., be again exposed to public auction sale is refused, and the petition in support thereof is dismissed; the order of this court entered July 7, 1969, insofar as it stayed the foreclosure proceedings theretofore instituted by Newtown Savings & Loan Association, and insofar as it appointed Harry J. Liederbach, Esq., as liquidating receiver of Haj, Inc., and imposed upon him certain duties, is rescinded; the petition filed on behalf of Newtown Savings & Loan Association to dissolve the stay order entered July 7, 1969, is granted, and the said stay order is hereby dissolved, conditioned upon the payment of the sum of $401.08 to the Louis Traiman Auction Company. The complaint in equity first filed in this matter is dismissed.

If no exceptions are filed hereto within 20 days following notice to counsel of the filing of this adjudication, the decree nisi shall be entered by the prothonotary, on praecipe, as the final decree of the chancellor.