Jurisdiction relinquished.

**WELLS FARGO BANK, NATIONAL ASSOCIATION AS INDENTURE TRUSTEE**

**v.**

**The PARKING AUTHORITY OF The CITY OF SCRANTON and The City of Scranton.**

**Appeal of: Teamsters Local 229.**

Commonwealth Court of Pennsylvania.

Argued March 12, 2014.

Decided June 26, 2014.

Stephen J. Holroyd, Philadelphia, for appellant.

Michael J. Asbell, Scranton, for appellee Wells Fargo Bank, National Association.

Jennifer J. Clark, Scranton, for appellee Michael J. Washo.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge, RENÉE COHN JUBELIRER, Judge, ROBERT SIMPSON, Judge, MARY HANNAH LEAVITT, Judge, P. KEVIN BROBSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge BROBSON.

On May 30, 2013, the Court of Common Pleas of Lackawanna County (trial court), following a hearing, preliminarily enjoined Teamsters Local 229 (Union) from "pursuing arbitration of grievances identified as American Arbitration Association Case No. 14–390–01245–12" against the Parking Authority of the City of Scranton (Parking Authority). The Union now appeals the trial court's order, which, under our standard of review, we must affirm if there are any apparently reasonable grounds for the trial court's decision. *Dillon v. City of Erie,* 83 A.3d 467, 472 n. 7 (Pa.Cmwlth. 2014).

The Union argues that the trial court's order violates the Pennsylvania Labor Anti–Injunction Act, Act of June 2, 1937, P.L. 1198, *as amended,* 43 P.S. §§ 206a–206r (Anti–Injunction Act), and the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–.2301 (PERA). In response, Appellees Michael J. Washo, court-appointed receiver for certain assets of the Parking Authority (Receiver), and UMB Bank, N.A., successor to Wells Fargo Bank, N.A., as trustee of bond indentures used to finance the assets under receivership (Bond Trustee), contend that the trial court acted appropriately under authority conferred by what is commonly known as the Pennsylvania Parking Authority Law, 53 Pa.C.S. §§ 5501–5517 (Authority Law).

Certain relevant facts are undisputed. The Union and the Parking Authority entered into a collective bargaining agreement (Agreement), the most recent term of which extended to February 5, 2013. The Agreement includes mandatory American Arbitration Association (AAA) arbitration to resolve grievances. (Reproduced Record (R.R.) 128a–29a.) While the Agreement was in effect, the Bond Trustee exercised its right under the Authority Law to seek a court-appointed receiver due to the Parking Authority's default in the payment of principal and/or interest on the outstanding bonds used to finance cer-

tain Parking Authority facilities (Facilities). In this regard, the Authority Law provides:

(4) A trustee under this subsection or a trustee under any deed of trust, indenture or other agreement, whether or not all bonds have been declared due and payable, shall be entitled to the appointment of a receiver.

(5) A receiver under paragraph (4):

(i) may enter and take possession of a facility of the authority or any part of a facility the revenues or receipts from which are or may be applicable to the payment of the bonds in default;

(ii) may operate and maintain the facility or part;

(iii) may collect and receive all rentals and other revenues arising from the facility after entry and possession in the same manner as the authority or the board might do; and

(iv) shall deposit money collected under subparagraph (iii) in a separate account and apply the money as the court directs.

(6) Nothing in this chapter authorizes a receiver appointed under paragraph (4) to sell, assign, mortgage or otherwise dispose of assets of whatever kind and character belonging to the authority. It is the intention of this chapter to limit the powers of the receiver to the operation and maintenance of the facilities of the authority as the court directs. No bondholder or trustee shall have the right in an action at law or in equity to compel a receiver, nor shall a receiver be authorized or a court empowered to direct the receiver, to sell, assign, mortgage or otherwise dispose of assets of whatever kind or character belonging to the authority.

(7) The trustee has all powers necessary or appropriate for the exercise of functions specifically set forth in this subsection or incidental to the general representation of the bondholders in the enforcement and protection of their rights.

53 Pa.C.S. § 5507(b). As the court of common pleas in which the Parking Authority is located, the trial court has jurisdiction over the receivership proceeding commenced by the Trustee. *Id.* § 5507(c).

On August 14, 2012, the trial court executed a Consent Order Appointing Receiver (Consent Order). Pursuant to the Consent Order, the Receiver was empowered to take possession and control of the Facilities and rights, claims, and records related thereto, inclusive of all past and future revenues derived from the Facilities. Such comprised the "Receivership Estate." Under the Consent Order, the Receiver, in performing his duties, "shall care for, manage, preserve and protect the Receivership Estate in the manner the Receiver believes in his sole discretion to be most beneficial to the Receivership Estate." (Consent Order ¶ 2.) The Consent Order further provides that nothing in the Consent Order relieves the Parking Authority of any of its existing obligations or liability under the law. (*Id.* ¶ 5.)

The Receiver, in consultation with the Bond Trustee, is empowered to determine "how best to use, operate, manage, control, rent and lease the Receivership Estate." (*Id.* ¶ 7(f).) With respect to employment, the Consent Order provides:

i. The Receiver may employ additional agents and employees, as necessary to preserve and protect the Receivership Estate, but is under no obligation to employ, continue to employ, or compensate in any way any employees of the [the Parking Authority] ... and agrees to pay said agents, contractors and employees to the extent so employed, at

ordinary and usual rates and prices, pursuant to appropriate contracts, or otherwise, out of funds that come into his possession as Receiver and as expenses for the operation, care, preservation and maintenance of the Receivership Estate, and shall in his sole discretion after consultation with the Bond Trustee, consider and implement a process by which a parking facilities operator may be engaged for the long term operation of the parking operations of the Receivership Estate, if the Receiver determines such engagement to be beneficial and cost effective;

j. The Receiver shall have the sole and exclusive right to require the Authority to provide Authority employees to render services to the Receivership Estate the Receiver may deem in his sole discretion to be necessary for the administration and operation of the Receivership Estate. The Receivership Estate shall reimburse the Authority for all compensation and benefits earned by such employees in connection with services rendered by them to the Receivership Estate as expenses for the operation, care, preservation and maintenance of the Receivership Estate. The Receiver and the Receivership Estate shall not, for any purpose, be deemed the employer of such employees, who shall remain the employees of the Authority[.]

(*Id.* ¶ 7(i), (j).) These paragraphs appear to give the Receiver three near-term options in terms of employees to operate the Facilities within the Receivership Estate: (1) hire his own employees; (2) employ the Parking Authority's employees; or (3) require the Parking Authority to make its employees available to the Receiver. The Receiver was also empowered to explore a long-term option of retaining a parking facilities manager. Although the parties have some dispute over details, there is no dispute that following the entry of the Consent Order, Parking Authority employees represented by the Union were displaced from their jobs and the Receiver contracted with a third-party to run the Facilities. It is also not disputed that, at some point thereafter, the Union initiated AAA arbitration against the Parking Authority, alleging breaches of the Agreement.

The matter below arose when the Union notified the Receiver, by letter dated December 26, 2012, of the scheduled arbitration with the Parking Authority and "strongly encouraged" the Receiver to attend and represent his and the bondholders' interests.[1] (R.R. 41a.) In that letter, the Union, through its counsel, contended, *inter alia*, that the bondholders and the new operator of the Facilities were "successor[s] in the bargaining relationship and" Agreement. The Union contended that the Consent Order did not void the Agreement with the Parking Authority. It also contended that it would hold the Receiver, the bondholders, and the new operator financially liable for the damages to the displaced Union employees. (*Id.*)

Communications between counsel for the Receiver and the Union ensued thereafter. Unable to reach some sort of understanding with the Union, the Receiver and the Bond Trustee jointly filed an emergency petition with the trial court, seeking a temporary restraining order and/or preliminary injunctive relief, enjoining the Union from proceeding with the arbitration against the Parking Authority and directing the Union, instead, to first seek permission from the trial court, as part of

---

1. The Union sent a similar note of "encouragement" to the Mayor of the City of Scranton. (R.R. 50a–51a.)

the receivership proceeding, to pursue the arbitration. In its Memorandum and Order, granting the Receiver and the Trustee relief, the trial court relied on precedent that generally supports the trial court's decision to serve as the gatekeeper for any claims against the Receiver or the Receivership Estate.

In *Warner v. Conn,* 347 Pa. 617, 32 A.2d 740 (1943), for example, the Court of Common Pleas of Philadelphia County appointed a receiver to wind up the affairs of a partnership. The receiver conducted business on behalf of the partnership for less than a month, and then obtained court approval to sell all of the partnership assets, including machinery that was subject to a bailment lease in favor of Northern Machine Works (Northern). After the sale, Northern sued the receiver to recover the proceeds of the sale of the machinery. The receivership court denied the petition, concluding that allowing creditors to initiate separate actions against the receiver outside of the supervision of the receivership court went against the goal of an orderly administration of the receivership estate. In affirming, the Pennsylvania Supreme Court noted the following guiding principles:

> The legal status of a receiver, his authority and duty, is clear. He is "the officer-the executive hand-of a court of equity. His duty is to protect and preserve, for the benefit of the persons ultimately entitled to it, an estate over which the court has found it necessary to extend its care." He takes only the interest of the owner of the property subject to all valid liens and encumbrances against it. He collects and administers assets not in his own right, for his own benefit, but, by virtue of a court order, for the benefit of all the creditors, secured or otherwise.

*Warner,* 32 A.2d at 741 (quoting *Pearson Mfg. Co. v. Pittsburgh Steamboat Co.,* 309 Pa. 340, 163 A. 680, 682 (1932)) (emphasis in original) (alterations omitted) (internal quotation marks omitted). With respect to suits against the court-appointed receiver, the Pennsylvania Supreme Court adopted the well-settled rule "that the granting of leave to sue either on behalf of or against a receiver is generally a matter within the discretion of the [receivership] court." *Id.* at 621, 32 A.2d at 742.

■ The Consent Order incorporates these principles:

> Any claim brought against the Receiver or the assets of the Receivership Estate by any third party related in any way to the administration or operation of the Receivership Estate shall be filed in this Court. Subject only to orders of Courts of superior jurisdiction to this Court, no judgment of a party other than the Bond Trustee shall be enforced against the Receiver or the Receivership Estate absent further order of this Court.

(Consent Order ¶ 16.) In addition, the Authority Law expressly authorizes the Trustee to "[e]njoin any action which may be unlawful or in violation of the rights of the bondholders." 53 Pa.C.S. § 5507(b)(3)(iv). The Receiver and the Bond Trustee contend that the trial court acted appropriately in enjoining the arbitration under paragraph 16 of the Consent Agreement and the Authority Law. We disagree.

Although we acknowledge the well-settled law requiring leave of court to pursue claims against a receiver or a receivership estate, the trial court here enjoined the Union from pursuing grievance arbitration against the Parking Authority. The Parking Authority, "a public body corporate and politic," *id.* § 5505(a), though a party to the receivership proceeding below, is

not the subject of the receivership proceeding.[2] Indeed, the Consent Order only imposes a receivership on certain assets of the Parking Authority, not the Parking Authority itself. As part of that receivership, the Receiver is vested with the authority to run the Facilities for the benefit of *all creditors* of the Parking Authority,[3] secured and unsecured. The receivership court decides how any proceeds from the operations of the Facilities should be applied. *Id.* § 5507(b)(5)(iv). Accordingly, although paragraph 16 of the Consent Order requires court approval for any action against the Receiver or against the assets of the Receivership Estate, *see Warner*, nothing in the Consent Order requires the Union to seek permission from the trial court before grieving a labor dispute against the Parking Authority under the Agreement.

With respect to the Receiver's and Bond Trustee's reliance on the Authority Law as a basis to enjoin the Union from pursuing arbitration against the Parking Authority, "[w]e note ... that Pennsylvania labor policy strongly favors the arbitration of public employee grievances." *Commonwealth v. Joint Bargaining Comm. of Pa.*

*Social Servs. Union, Local 668,* 84 Pa. Cmwlth. 613, 480 A.2d 373, 375 (1984). We see nothing in receivership provisions of the Authority Law evidencing an intent by the General Assembly to override this policy and the collective bargaining rights under PERA. Again, for the reasons set forth above, the Parking Authority is a party to the receivership, but it is not the subject of the receivership. And although the Authority Law authorized the Trustee to "[e]njoin an action which may be unlawful or in violation of the rights of the bondholders," 53 Pa.C.S. § 5507(b)(3)(iv), we fail to see how permitting the Union to seek an arbitrator's decision on whether the Parking Authority violated the Agreement would be "unlawful"[4] or would violate any right of the bondholders.

To the extent the Receiver and the Trustee have any concern that an arbitrator's decision might conflict with the Authority Law or lead to a claim against the Receivership Estate,[5] such a concern is too speculative to support a preliminary injunction. *See Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 828 A.2d 995, 1002–03 (2003). Though the Union, in its December 26,

---

2. The structure of a receivership under the Authority Law differs materially from federal bankruptcy in at least two respects. First, an entity filing for federal bankruptcy protection may become a "debtor in possession," meaning that while in bankruptcy, the entity continues to possess the assets that are the subject of the claims by creditors and may even continue to operate the business. 11 U.S.C. § 1101. Under the Authority Law, however, a receivership always divests the debtor (parking authority) of possession. Second, federal bankruptcy law expressly provides for an automatic stay of litigation against a debtor, even where the debtor is not a debtor in possession. 11 U.S.C. § 362(a). There is, however, no automatic stay provision in the Authority Law or similar provision that protects the debtor parking authority from creditor claims.

3. The Facilities, though *in custodia legis*, remain the property of the Parking Authority. *See* 53 Pa.C.S. § 5507(d) (providing that allowed attorneys' fees and expenses of trustee and receiver shall be first charged against revenues and receipts "derived from the facilities *of the authority*" (emphasis added)).

4. Indeed, under PERA, arbitration is mandatory. *See* Section 903 of PERA, 43 P.S. § 1101.903.

5. Neither the Receiver nor the Bond Trustee argued or presented evidence below upon which the trial court could, or this Court on appeal can, conclude that the Parking Authority lacks the financial wherewithal to participate in the grievance arbitration independent of the assets in the Receivership Estate.

2012 letter to the Receiver, took the position that the Receiver and the Receivership Estate would be held responsible for the Parking Authority's alleged breach of the Agreement, we see this merely as a statement of legal position intended to persuade the Receiver to participate voluntarily in the arbitration proceeding. The impact of the arbitration proceeding, if any, on the Receivership Estate cannot be known until the arbitration proceeding is concluded. Ultimately, *if* the Union prevails in receiving some relief from an arbitrator, it will be up to the trial court—as the receivership court, the court hearing an appeal from the arbitration award, or possibly both—to decide the extent to which the arbitrator's award can and will be enforced.

For these reasons, we will reverse the trial court's order preliminarily enjoining the Union from pursuing grievance arbitration against the Parking Authority.[6] We, therefore, need not address the parties' other arguments for affirming or reversing the trial court's decision.

### ORDER

AND NOW, this 26th day of June, 2014, the order of the trial court, dated May 30, 2013, enjoining Teamsters Local 229 from pursuing grievance arbitration against the Parking Authority of the City of Scranton, is REVERSED, and the preliminary injunction is DISSOLVED.

---

6. It is the trial court's order that is on appeal. As noted above, that order clearly precluded

the Union from pursuing arbitration "against the Parking Authority."