J-A33019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GREGORY THEOBALD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| R.H. KUHN COMPANY, INC.; PNC BANK, N.A.; COMPASS ADVISORY PARTNERS, LLC; AND CITIZENS BANK | |
| | No. 342 WDA 2016 |

Appeal from the Order Entered February 4, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 14-002425

BEFORE:  LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED MARCH 17, 2017**

Appellant, Gregory Theobald, appeals from the order of the Court of Common Pleas of Allegheny County, entered February 4, 2016, that denied Appellant's motion to file suit against a court-appointed receiver.  ***See Warner v. Conn***, 32 A.2d 740, 741 (Pa. 1943) (suit against receiver requires permission from the court that appointed the receiver).  We affirm.

In its opinion, entered June 24, 2016, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  For the convenience of the reader, we will briefly summarize them.

_____

[*] Retired Senior Judge assigned to the Superior Court.

According to Appellant, he was employed as an executive with Appellee R.H. Kuhn Company, Inc. from 2005 to 2009. *See* Tr. Ct. Op., 6/24/16, at 3. On January 4, 2010, Appellant and Kuhn entered into a written employment agreement and compensation incentive plan ("Agreement"). *Id.* Paragraphs 7(e), (i), and (k)[1] of the Agreement state:

> (e) If [Kuhn] terminates this Agreement without "justifiable cause" as provided in subsection 7(a)(i), [Kuhn] shall pay [Appellant] his then current base salary for 12 months after the effectiveness of such termination, payable in equal payments in accordance with [Kuhn]'s customary payroll practices commencing with the first payroll period that begins at least 30 days after the termination of [Appellant]'s Term of Employment **conditioned upon the [Appellant] having provided [Kuhn] with an executed general release** in the form attached hereto as Exhibit A **(the "General Release")** and the time for [Appellant]'s revocation of the General Release having expired. Such payments shall be made in accordance with [Kuhn]'s customary payroll practices until paid in full. **Any payment pursuant to this paragraph 7(e) is contingent upon [Appellant]'s execution of the General Release within 21 days after termination of the Term of Employment** (and [Appellant]'s not revoking that General Release) and will be in lieu of payments to which [Appellant] might have been entitled under any other severance plan of [Kuhn].
> . . .
> (i) Change of Control. In the event the Term of Employment is terminated by [Kuhn] without justifiable cause (as defined herein) or [Appellant] resigns with Good Reason (as defined herein) within one (1) year following a Change of Control of [Kuhn] has occurred, then, in such event, [Kuhn] shall pay [Appellant] an amount equal to twenty-four (24) months of Base Salary in effect at the time of the termination. For the purposes of the foregoing, Change of Control shall have the meaning set

---

[1] The parties agree that what was intended to be Paragraph 7(k) was misidentified as a second Paragraph 7(i) in the Agreement. For clarity, we refer to that paragraph here as 7(k).

forth in [Kuhn]'s 2010 Incentive Compensation Plan (without regard to any subsequent amendments thereto). For purposes of the foregoing, "*Good Reason*" means the occurrence of any of the following: (i) a material diminution in [Appellant]'s base compensation; (ii) a material diminution in [Appellant]'s authority, duties, or responsibilities; (iii) a material change in the geographic location at which the Employee must perform the services under this Agreement; or (iv) any other action or inaction that constitutes a material breach by [Kuhn] of this Agreement. For purposes of this provision, Good Reason shall not be deemed to exist unless the Employee's termination of employment for Good Reason occurs within 2 years following the initial existence of one of the conditions specified in clauses (i) through (iv) above, the Employee provides [Kuhn] with written notice of the existence of such condition within 90 days after the initial existence of the condition, and [Kuhn] fails to remedy the condition within 30 days after its receipt of such notice. **[Kuhn] shall pay the amount required under this paragraph 7(i) in a single payment thirty (30) days after termination of the Term of Employment, subject to and conditioned upon [Appellant]'s execution of the General Release required pursuant to paragraph 7(k) hereof and such release becoming irrevocable.** Any payments made pursuant to this paragraph 7(j) [*sic*] will be in lieu of payments to which [Appellant] might have been entitled under paragraph 7(e) of this Agreement or under any other severance plan of [Kuhn].
. . .
(i [*sic*, k]) **Any payment pursuant to paragraph 7(e) or 7(j) shall be contingent upon [Appellant]'s execution of the General Release within 21 days after termination of the Term of Employment, and [Appellant]'s not revoking that release.**

Agreement at ¶¶ 7(e), 7(i), 7(k) (bold emphasis added; italics in original).

After Kuhn defaulted on loans owed to Appellee PNC Bank, PNC confessed judgment against Kuhn and consented to an order of court ("Consent Order"), dated December 7, 2010, by which Appellee Compass Advisor Partners, LLC, was appointed as receiver for the benefit and protection of Kuhn's creditors. **See** Tr. Ct. Op., 6/24/16, at 2. Pursuant to

- 3 -

Paragraph 20 of the Consent Order, Compass retained Gordon Brother Retail Partners, LLC ("the Liquidator"), to act as the Receiver's consultant in liquidating Kuhn's assets. **See also** Tr. Ct. Op., 6/24/16, at 3. Appellant contends that the appointment of the receiver constituted a "Change of Control" under the Agreement. Appellant's Brief at 11. Appellees do not dispute this characterization. Appellees' Brief at 5, 23.

Compass advised Appellant that his employment would end once the Liquidator "was functioning appropriately." Tr. Ct. Op., 6/24/16, at 3. Before being "let go," Appellant attempted to address the payout of his deferred compensation, which he valued at $288,000; however, PNC informed Appellant that Compass was able to not pay him the amount that he was seeking. **Id.** at 3-4.

On February 14, 2014, Appellant filed praecipes for writs of summons with the Allegheny County Department of Court Records as to all Appellees, including the receiver, Compass. Under **Warner v. Conn**, **supra**, a suit cannot be brought against a receiver without permission from the court which appointed it. Therefore, on July 15, 2015, Appellant filed a motion for leave to file a complaint[2] against Compass, as well as against Kuhn and PNC,

_____

[2] Appellant's motion for leave to file a complaint does not appear on the trial court docket and was not part of the certified record. Appellant included a copy in his reproduced record to this Court. Because Appellees have not objected and there is no dispute regarding the contents of this document, we will consider it. **See Commonwealth v. Barnett**, 121 A.3d 534, 545
*(Footnote Continued Next Page)*

for breach of contract, conversion and violation of the Pennsylvania Wage Payment and Collection Law.[3] In opposing the motion, one of the putative defendants' primary defenses was that Appellant never executed the General Release required under Paragraph 7. On February 4, 2016, the trial court denied Appellant's motion for leave to file the complaint. Appellant's timely appeal followed on March 4, 2016.

Appellant raises the following questions on appeal:

1. Whether the lower court erred in its conclusion that execution of the General Release, attached to the Employment Agreement, within twenty-one days, is a condition precedent to payment of post-termination pay.

2. Whether the execution of the General Release is an absolute condition precedent to payment, or whether execution of the Release is an event which marks the time at which the obligation for payment must be fulfilled.

3. Whether PNC and Compass' anticipatory repudiation and refusal to pay [Appellant] the compensation at the time compensation was due operates to discharge [Appellant]'s ostensible duty to perform any condition precedent through execution of a General Release.

4. Whether Compass (and PNC) is protected or immune from [Appellant]'s underlying claims for violation of Pennsylvania's Wage Payment and Collection Law, Breach of Contract, and Conversion.

Appellant's Brief at 5.

---
*(Footnote Continued)* _____

n.3 (Pa. Super.), ***appeal denied***, 128 A.3d 1204 (Pa. 2015), ***cert. denied***, 136 S.Ct. 2391 (2016).

[3] 43 P.S. §§ 260.1-260.45.

The Supreme Court of Pennsylvania has held that whether to grant leave to sue either on behalf of or against a receiver is a matter committed to the trial court's discretion. *Warner*, 32 A.2d at 740; *see Wells Fargo Bank, Nat'l Ass'n as Indenture Tr. v. Parking Auth. of Scranton*, 95 A.3d 371, 375 (Pa. Cmwlth. 2014) (*en banc*) (decision is "within the discretion of the receivership court").[4] We therefore review the trial court's decision for an abuse of discretion. *See Warner*, 32 A.2d at 742. In making this determination, we bear in mind that —

> It may be stated . . . as a general rule, that where receivers have . . . possession of property in which a third party has an interest which is paramount to that of the receivers, the court appointing them should, upon proper application, give leave to such third party to enforce, in the appropriate court, his claim to the property in a suit against the receivers, and a refusal to give such leave, when duly and properly applied for, is reversible error **unless it clearly and certainly appears that the petitioner's alleged claim is not valid.**

*Meehan v. Connell Anthracite Mining Co.*, 178 A. 833, 836 (Pa. 1935).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion by the Honorable Christine Ward of the Court of Common Pleas of Allegheny County, we conclude that there is no merit to the first, second, and fourth issues that Appellant has

---

[4] "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Haan v. Wells*, 103 A.3d 60, 68 n.2 (Pa. Super. 2014) (citation omitted).

raised on appeal. The trial court opinion properly disposes of these questions. *See* Tr. Ct. Op., 6/24/16, at 5-9 (holding the text of the Agreement is clear that payment under Section 7(e) of the Agreement is contingent on Appellant's execution of a General Release, Appellant never alleged that he had executed the General Release within 21 days of termination, and thus the Agreement bars him from recovery, *id.* at 5-6; Appellant's second issue does not allege additional error and merely rephrases the first issue, *id.*; and, with regard to the fourth issue, even assuming Appellant fulfilled the applicable conditions precedent, receivers are immune from suit as "appointive judicial officers," 42 Pa.C.S. § 102, and Compass and its indemnifier PNC therefore cannot be held liable to Appellant for deferred compensation, *id.* at 7-9).

Appellant's third argument is that Compass anticipatorily repudiated the Agreement by refusing to pay the deferred compensation, thereby discharging Appellant from his duty to execute the disputed General Release. The trial court stated that "[t]his argument does not appear of record prior to the filing of the Statement of Errors and therefore appears to have been waived. Pa.R.A.P. 302(a)." Tr. Ct. Op., 6/24/16, at 7. Appellant responds that, although his proposed complaint did not allege anticipatory repudiation and he did not make an argument to the trial court that explicitly used the words "anticipatory repudiation," he sufficiently presented this contention in briefing that argued that Compass' failure to first pay him the compensation

he sought excused his failure to execute the General Release and made any argument about the release "illusory." Appellant's Brief at 23-24 (citing to brief in support of his motion for leave to file complaint). The trial court did address **that** argument in its initial memorandum denying Appellant's motion. The court stated:

> [Appellant] argues that the General Release was not required because the consideration for such release would have been the payment. This fundamentally misunderstands how conditions precedent work. Quite simply, if a condition precedent to payment is not fulfilled, then no payment is owing, whether the consideration for the performance of the condition was the consideration or not. [Appellant] appears to believe that the payment would not have been forthcoming. If so, and [Appellant] had executed the General Release, Kuhn, but not necessarily any other defendants, would have been in breach of the [] Agreement. As it happens, [Appellant] did nothing.

Tr. Ct. Mem., 2/4/16, at 2-3. We agree.

Appellant is correct that "an anticipatory repudiation by an obligor discharges an obligee's duty to perform a condition precedent." **Jonnet Dev. Corp. v. Dietrich Indus., Inc.**, 463 A.2d 1026, 1031 (Pa. Super. 1983). But "to constitute anticipatory breach under Pennsylvania law there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." **2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies of Greater Phila.**, 489 A.2d 733, 736 (Pa. 1985); **see also Harrison v. Cabot Oil & Gas Corp.**, 110 A.3d 178, 184 (Pa. 2015) (anticipatory repudiation of an agreement entails an essential declaration of an intention to breach thereby "reinforce[ing] the clear predicates of

repudiation" expressed in **2401 Pa. Ave. Corp.**). And the repudiation discharges the obligee's duty only if it actually causes the obligee to fail to perform. **Empire Props., Inc. v. Equireal, Inc.**, 674 A.2d 297, 305 (Pa. Super. 1996) ("one party's breach of a contract may render the other party's tender of performance a futile act[;] it does not relieve the other party of the burden of proving its ability to perform under the contract").

There was no anticipatory repudiation here. The Agreement required Appellant to execute the release before any payment would be made, and, therefore, the fact that the putative defendants did not make any payment first cannot in itself have been an anticipatory repudiation; Compass was not required by the Agreement to pay first. There is no evidence that Compass or the other putative defendants made an "absolute and unequivocal" refusal to pay if a release was presented to them, or that such an "absolute and unequivocal" refusal caused Appellant to fail to execute the release. Appellant relies on a February 15, 2011 e-mail from PNC that said the receiver's budget did not include funds to pay the $288,000 claim, but the record shows that this e-mail was not the last word on the subject and that the parties continued negotiations after it was sent. In its brief to the trial court, Appellant supported its repudiation argument merely by stating: "it is unlikely that PNC or Compass had a check for $288,000.00 patiently waiting at the ready to give to [Appellant], even assuming [Appellant] was required to tender the Release prior to payment." Appellant's Brief at 24

(quoting trial court brief).  Such unsupported speculation does not constitute an anticipatory repudiation.

Therefore, even if Appellant did not waive his anticipatory repudiation claim, he failed to provide any basis to support it.  Appellant's third issue is therefore meritless.

In sum, we discern no abuse of discretion in the trial court's denial of leave to file a complaint against the receiver because "the petitioner's alleged claim is not valid."  **Meehan**, 178 A. at 836; **see also Warner**, 32 A.2d at 742.  The parties are instructed to attach a copy of the trial court's memorandum of February 4, 2016, and the trial court's opinion of June 24, 2016, to all future filings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2017

- 10 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| GREGORY THEOBALD,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>R.H. KUHN COMPANY, INC.; PNC<br>BANK, NATIONAL ASSOCIATION;<br>COMPASS ADVISORY PARTNERS,<br>LLC; and CITIZENS BANK,<br>　　　　Defendants. | CIVIL DIVISION<br><br>GD No. 14-002425<br><br>Hon. Christine Ward<br><br><br>**OPINION** |

Copies Sent To:
*Counsel for Plaintiffs:*
Jeffrey T. Olup, Esquire
223 Second Street
Monongahela, PA 15063

*Counsel for Defendants:*
Christopher Schueller, Esquire
Timothy P. Palmer, Esquire
Nicholas E. Meriwether, Esquire
BUCHANAN INGERSOLL & ROONEY,
P.C.
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA 15219

1

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| GREGORY THEOBALD, | CIVIL DIVISION |
| Plaintiff, | No. GD-14-002425 |
| v. | |
| R.H. KUHN COMPANY, INC.; PNC BANK, NATIONAL ASSOCIATION; COMPASS ADVISORY PARTNERS, LLC; and CITIZENS BANK, | |
| Defendants. | |

## OPINION

In this case, plaintiff sought to hold our receiver liable for wage payments allegedly owed to him by his employer, which was in receivership. To that end, plaintiff moved for leave to bring suit against our receiver. We denied that motion, and plaintiff now appeals.

## BACKGROUND

Plaintiff Gregory Theobald (hereinafter "Theobald") filed a motion for leave to file a complaint against the receiver of his previous employer (R.H. Kuhn Company ("R.H. Kuhn")), Compass Advisory Partners LLC ("Compass"), and PNC Bank, NA ("PNC") for breach of contract, conversion, and under the Pennsylvania Wage Payment and Collection Law.

On December 7, 2010, before this court, PNC Bank confessed judgment against Kuhn and consented to an Order of Court Appointing Receiver ("Consenting Order"), by which Compass was appointed as Receiver for the benefit and protection of R.H. Kuhn's creditors. This

2

Court later terminated the receivership of R.H. Kuhn on September 10, 2013. Order Terminating Receivership No. GD-10-21712. On July 15, 2015, this Court received this Motion to File for Leave to File Complaint from Gregory Theobald ("Motion"). This Court denied the Motion for Leave on February 4, 2016. On March 21, 2016, Theobald filed Notice of Appeal to Higher Court followed by a Concise Statement of Errors on Appeal.

Gregory Theobald was employed by R.H. Kuhn from 2005 through 2009 as Vice-President of Store Sales and Training for several Roomful Express Furniture locations in Pittsburgh, PA and the surrounding area. In the first days of 2010, Kuhn and Theobald entered into a written Employment Agreement and Compensation Incentive Plan (hereinafter "2010 Agreement"), which together outlined the terms, conditions and compensation of Theobald's executive position for the 2010 calendar year. The Employment Agreement provided that upon a "change in control" and/or Theobald's subsequent termination without cause, he be paid deferred compensation totaling two years base salary. Neither Compass nor PNC are signatories to the 2010 Agreement.

Following confession of judgment and appointment of Compass as receiver before and by this court, Compass advised Theobald of their plan to discharge him once the liquidator (Gordon Brothers Retail Partners, LLC) was functioning appropriately. Ultimately, Compass and PNC asked Theobald to stay on during liquidation. Theobald was paid his salary and a separate Retention Bonus through funds in the Kuhn account at PNC until he was released from employment on March 31, 2011. Before his release, Theobald attempted to address the payout of his deferred compensation, to which Compass advised that he would need to negotiate down to a

3

lower amount or PNC would contest any such payment. These negotiations, according to Theobald, were of no avail. On February 15, 2011, PNC informed Theobald that the Receiver could not and would not pay him the $288,000 he was seeking.

In his Brief in Support of Motion for Leave to File Complaint ("Brief in Support"), Theobald argued that Compass and PNC were liable to him for deferred compensation for several reasons: 1) Compass was not absolutely immune to claims or suits, 2) PNC and Compass were bound by the 2010 Agreement, 3) PNC and Compass' failure to pay deferred compensation established conversion of those funds, and 4) Compass "employed" Theobald and is therefore liable to him under WPCL. The plaintiff argues that the appointment of Compass as a receiver constitutes a "change of control," which triggered the payment of Theobald's deferred compensation of twenty-four months base salary no later than 30 days after termination, per the agreement. Theobald was never paid the deferred compensation he claims he is owed.

In their Memorandum in Opposition to Plaintiff's Motion for Leave to File Complaint ("Memorandum in Opposition"), Compass and PNC argued they are not liable to Theobald because: 1) Pennsylvania law provides immunity for court-appointed receivers in cases like this one, 2) they did not have contractual privity with the plaintiff nor did Theobald execute a General Release within 21 days of termination or change in control, which is requisite to payment, 3) there can be no liability under a conversion theory for unpaid wages, and 4) PNC and Compass were never "employers" of the plaintiff as required to bring a WPCL claim.

4

## STANDARD OF REVIEW

It is a well-settled rule that the granting of leave to sue either on behalf or against a receiver is a matter of the appointing court's discretion. *Warner v. Conn*, 347 Pa. 617, 620 (1943). So, we conclude that the decision of this court should be reviewed under an abuse of discretion standard.

## MATTERS COMPLAINED OF ON APPEAL

The plaintiff filed a concise statement of errors complained on appeal encompassing the following alleged errors:

1. The Court erred in its conclusion that the execution of the General Release, attached to the Employment Agreement, within twenty-one days, is a condition precedent of payment;
2. Execution of the General Release is not an absolute condition precedent to payment; rather, execution of the General Release is an event which marks the time at which the obligation for payment must be fulfilled;
3. PNC and Compass' anticipatory repudiation and refusal to pay Theobald his post-termination compensation at the time compensation was due operates to discharge Theobald's ostensible duty to perform any condition precedent through execution of a General Release;
4. Neither Compass (nor PNC) is protected or immune from Theobald's underlying claims for Violation of Pennsylvania's Wage Payment and Collection Law, Breach of Contract, and Conversion.

Statement of Errors at 2-3.

## DISCUSSION

First, the plaintiff proposes that the Court erred in finding that the execution of a General Release is a condition precedent per the 2010 Agreement. The text of the Agreement is clear: Theobald's failure to execute General Release within 21 days of termination bars him from recovery.

5

**Any payment pursuant to this paragraph 7(e) is contingent upon Executive's execution of the General Release within 21 days after termination** of the Term of Employment (and the Executive not revoking the General Release).... The Company shall pay the amount required under this paragraph 7(i) in a single payment thirty (30) days after termination of the Term of Employment, **subject to and conditioned upon the Executive's execution of the General Release required** pursuant to paragraph 7(k) hereof and such release becoming irrevocable.

Brief in Support, Attachment "A" at 4-5 (emphasis added).

When the terms of a contract are clear and unambiguous, the writing itself is to determine the rights, responsibilities and liabilities of the parties. *Ress v. Barent*, 548 A.2d 1259 (1988). Execution of a General Release is an absolute prerequisite to payment of deferred compensation under the 2010 Agreement. Theobald did not execute such General Release within 21 days of termination. Therefore, Theobald did not fulfill all contractual requirements to receive his compensation.

Second, Theobald argues that execution of General Release is not an absolute requisite to payment, but instead "marks" the time at which he must be paid.[1] This section does not allege additional error. Instead, it expands upon the previous point and fails for the same reason. Again, the language of the 2010 Agreement is clear regarding the execution of General Release as an absolute prerequisite on payment of deferred compensation and fails to describe any other function of the General Release other than as requisite consideration for payment.

---

[1] Theobald argued in earlier filings that in so fulfilling all conditions necessary to receive the deferred compensation, his right to the deferred compensation had vested and therefore cannot be denied. Brief in Support at 7 (citing *Abbott v. Schnader, Harrison, Segal & Lewis*, 805 A. 2d 547 (2002)). This argument however, was not included in the Statement of Errors and was therefore abandoned and waived.

6

Third, Theobald asserts that Compass anticipatorily repudiated by refusing to pay the deferred compensation, thus discharging him of his duty to execute the disputed General Release.[2] This argument does not appear of record prior to the filing of the Statement of Errors and therefore appears to have been waived. Pa.R.A.P. 302(a). *See also Irwin Union Nat. Bank & Trust Co. v. Famous*, 4 A.3d 1099 (2010).

Fourth, the plaintiff argues defendants PNC and Compass are not immune from his claims of breach of contract, conversion and WPCL violation. This Court did not consider nor decide the question of immunity in this case because plaintiff's failure to fulfill condition precedent to payment made that analysis unnecessary.

More generally, receivers are provided immunity as "appointive judicial officers." 42 Pa.C.S.A. § 102. The text of the Order appointing Compass as receiver is explicit; "...the Receiver is hereby **vested with the standing and all power and authority of, but without the liability of or associated with or obligation to act as: ...(b) [RH Kuhn in its] capacity and relationship as 'employer,'** as the Receiver deems necessary for the operation and management of Company Assets." Memorandum in Opposition at 4 (citing Order at Section 18). Absent "intentional misconduct," per Order of this Court, Compass is free from personal liability as receiver. *Id.*

---

[2] In a letter to Mr. Theobald dated, Vice President of PNC Karyn Stiller responded: "Receiver has no authority to make payments outside of Receiver's budget. . . does not include monies for payments under any employment contracts, thus the Receiver does not have the ability to pay your $288,000 claim." Brief in Support, Attachment "A" at 3.

Further, once a receiver has been discharged from his official duties and the bond has been relinquished, no action can be maintained against a receiver because there is no longer a fund from which payment can be secured. 65 Am. Jur. 2d Receivers § 364. "[A]ctions against receivers growing out of the performance of their duties within the scope of their powers under valid orders of the court appointing them do not bind them personally but are regarded as brought against the receivership and judgments recovered in such actions are payable only from funds in the receiver's hands." *Id*; *see Goff v. Will Cty. Nat. Bldg. Corp.*, 35 N.E.2d 718, 720 (Ill. App. Ct. 1941).[3] R.H. Kuhn's receivership was terminated on September 10, 2013, nearly two years before the plaintiff sought leave to file a complaint against Compass. The bond has long been relinquished; the fund from which Theobald seeks compensation ceased to exist almost three years ago.

It should be noted that the power to appoint a receiver is an inherent equitable power of the court. The exercise of this power relies upon the availability and willingness of candidate receivers. Receiverships offer a low-cost, quicker alternative to federal bankruptcy. The prospect of post-receivership lawsuits incentivizes receivers to second-guess their decisions during the term of their receivership and necessarily chills willingness and availability of the most able candidates to serve, shrinking candidate pools and encouraging higher rates. To allow these costs against our receiver does violence to the very institution of receiverships. This is why *Warner v.*

---

[3] Although not founded in Pennsylvania law, we found similar arguments applied in federal and other state courts to be persuasive. *Goff*, 35 N.E.2d at 720; *See also Med. Dev. Int'l v. California Dep't of Corr. & Rehab.*, 585 F.3d 1211 (9th Cir. 2009); *F.D.I.C. v. Bernstein*, 786 F. Supp. 170, 181 (E.D.N.Y. 1992)

8

*Conn* and its subsequent doctrine require litigants to seek the permission of the court before bringing action against receivers. 347 Pa. 617; *See Sch. Dist. of City of Carbondale v. Hourigan*, 110 A. 173, 174 (1920).Therefore, when faced with such a case with no apparent legal basis, we must deny that request.

## CONCLUSION

The question at hand is whether suit against our receiver, Compass, and their indemnifier PNC, may go forward for failure to pay deferred compensation provided in the 2010 Agreement between R.H. Kuhn and Theobald. We concluded that neither Compass nor PNC were liable to Theobald for deferred compensation because Theobald failed to fulfill an absolute condition precedent to payment. In addition, We found neither Pennsylvania law nor its policies surrounding receiverships permitted us to grant such a motion in this circumstance. Accordingly, we denied the motion.

**BY THE COURT:**

**Christine Ward, J.**
**Dated 6/24/16**

9